# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>ALEXANDER TUNG CUU LE,<br><br>Defendant. | Case No.   2:22-mj-03779-DUTY |

**LODGED**
CLERK, U.S. DISTRICT COURT
9/22/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
09/22/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: __jm__ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 21, 2022, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46504 | Interference with Flight Crew Members and Attendants |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Justin Smet*
Complainant's signature

Justin Smet, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:      09/22/2022

/S/
Judge's signature

City and state:   Los Angeles, California         Hon. Michael Wilner, U.S. Magistrate Judge
*Printed name and title*

AUSA: Kellye Ng-McCullough, (213) 894-8408

**AFFIDAVIT**

I, Justin Smet, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a complaint against ALEXANDER TUNG CUU LE ("LE") for a violation of Title 49, United States Code, Section 46504, Interference with Flight Crew Members and Attendants, which occurred on September 21, 2022, while aboard American Airlines flight 377, inbound from Cabo San Lucas, Mexico, to Los Angeles, California.

2. The facts set forth in this affidavit are based on my personal observations, my training and experience, and the information obtained from other law enforcement officers and witnesses. This statement is intended to show that there is probable cause for the violation and does not purport to set forth all of my knowledge of, or investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF SPECIAL AGENT SMET

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so for over three years. Since December 2020, I have been assigned to the Los Angeles International Airport ("LAX") Office of the FBI, where I investigate violations of federal law which occur within the airport environment and on-board aircraft.

4. Through my training and experience with the FBI, I have become familiar with Title 49, United States Code, Section

46501, which establishes the Special Aircraft Jurisdiction of the United States and, under Section 46501(2)(D)(i), and gives the federal government jurisdiction in all criminal matters occurring on any civil aircraft that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States.

### III. SUMMARY OF PROBABLE CAUSE

5. Title 49, United States Code, Section 46504 states, in pertinent part, "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both."

6. On or about September 21, 2022, LE flew on American Airlines flight 377 ("AA 377"), from San José del Cabo to Los Angeles, California. During the flight, LE assaulted one American Airlines flight attendant, S.B.G., by punching S.B.G. in the back of the head. S.B.G. was unable to do his/her normal job based on his/her injury. Additionally, the crew of AA 377 had to focus on restraining LE, which interfered with their duties and reduced their ability to provide service to over 100 passengers.

## IV. STATEMENT OF PROBABLE CAUSE

7. Based on my interview and conversations with: (1) Flight Attendant S.B.G., a flight attendant on AA 377; (2) FBI Special Agent Caroline Walling, who interviewed AA 377 passenger witnesses M.H., L.J., and B.L.; (3) FBI Supervisory Special Agent Wess Brooker, who interviewed AA 377 flight attendant T.A.; (4) FBI Special Agent Gregory Myers, who interviewed AA 377 witness J.H.; (5) FBI Task Force Officer Pamela Meesri, who interviewed AA 377 flight attendant K.S. and witnesses K.H., D.H., and K.N.; and (6) FBI Task Force Officer Carlos Llamas, who interviewed AA 377 flight attendant M.T.T., I know the following:

8. LE was a passenger on AA 377, which flew from San José del Cabo in Mexico to LAX on or about September 21, 2022.

9. Approximately 20 minutes after takeoff, flight attendants K.S. and M.T.T. were conducting food and beverage service. LE exited his seat, 17A, grabbed K.S.'s left shoulder from behind, and asked for coffee. K.S. asked LE to wait. Moments later, LE grabbed both of K.S.'s shoulders from behind. In response, K.S. stepped back and put one hand up in a defensive posture. LE then walked toward the front of the plane.

10. After LE walked toward the front of the plane, K.S. and M.T.T. secured the food and beverage cart near the back galley of the aircraft. Around this time, flight attendant S.B.G. was informed about the incident with LE.

11.  LE was loitering near the first-class cabin and then sat in an unoccupied aisle seat near the bulkhead, which was the wall dividing the first-class cabin and main cabin.  S.B.G. approached LE to discuss his loitering near the first-class cabin.  LE's assigned seat was inside the main cabin in row 17.

12.  S.B.G. requested that LE return to his assigned seat.  LE did not comply.  According to S.B.G., LE stood up from the seat and assumed a fighting stance towards S.B.G by making closed fists with both his hands.  S.B.G. believed that LE was threatening S.B.G.

13.  Around this time, LE swung his arm at S.B.G. and missed S.B.G., according to flight attendant K.S.

14.  S.B.G. decided to report LE's behavior to the pilot.  S.B.G. turned away from LE and walked towards the front of the airplane.  At this time, as witnessed by several passengers, LE rushed towards S.B.G and punched S.B.G. in the back of the head.

15.  Passenger B.L. was seated in seat 5F and recorded a video of LE punching S.B.G.  As depicted below by the still frames captured from B.L.'s video, LE used a closed fist to strike flight attendant S.B.G.



16. After striking S.B.G., LE fled towards the back of the plane. Passengers D.H, J.H., and others apprehended LE near exit row 11. LE was handcuffed with flex cuffs provided by flight attendant T.A.

17. LE was later moved to window seat 8F because of concerns that LE posed a threat to passenger safety by occupying an exit row seat. Before LE moved to seat 8F, LE's hands and legs were cuffed by restraints provided by airline personnel.

18. While seated at 8F, LE continuously unbuckled his seatbelt, causing flight attendants to restrain him to the seat with seatbelt extenders.

19. Following the incident, S.B.G. walked to the back galley of the aircraft. S.B.G. remained in the back galley for the remainder of the flight, which was approximately one hour, and placed ice on the back of his head. LE's actions interrupted and interfered with S.B.G.'s ability to complete his job responsibilities.

20. After LE was restrained, the flight crew was still concerned about LE's behavior. Flight attendant T.A. was shaking so much that she had difficulty preforming her duties. Flight attendant T.A. stated the flight was "the longest hour and 58 minutes of my life."

21. After the flight landed, flight attendant S.B.G. was transported to the hospital.

## V. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that LE violated 49 U.S.C. § 46504, Interference with Flight Crew Members and Attendants.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  22nd day of September, 2022.

_____/S/_____
HONORABLE MICHAEL WILNER
UNITED STATES MAGISTRATE JUDGE